**UNITED STATES of America, Plaintiff,**

v.

**Jose AMADO NUNEZ, Defendant.**

**No. CR. 99-374(SEC).**

United States District Court, D. Puerto Rico.

May 10, 2001.

Maritza Gonzalez de Miranda, U.S. Attorney's Office District of P.R., Civil Division, San Juan, PR, for Plaintiffs.

Epifanio Morales–Cruz, Federal Public Defender Office, Maria H. Sandoval, San Juan, PR, for Defendants.

### OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendant's motion to dismiss the Indictment (**Docket # 62 and supplement # 63**). The United States has opposed the Defendant's motion (**Docket # 65**). For the reasons set forth below, Defendant's motion is **DENIED.**

### Background

An Indictment against Defendant was returned on December 8, 1999, charging him with trafficking and attempted trafficking of counterfeited tax stamps of the Treasury Department of Puerto Rico, a violation of 18 U.S.C. § 2320. Similarly, he was charged with transportation and attempted transportation of the same stamps from the Dominican Republic to Puerto Rico, a violation of 18 U.S.C. § 2314. Arraignment and bail hearings were heard on December 15, 1999. At the hearings, Defendant plead not guilty to both counts of the Indictment. Since Defendant had previously established his inability to obtain counsel, First Assistant Public Defender Epifanio Morales represented him at the hearings.

On January 5, 2000, a status conference was held to inform the Court about the status of Rule 16 Discovery matters and

the possibility of a plea agreement. Additional time was requested and granted, until February 11, 2000, to inform the Court whether Defendant would plead guilty or go to trial. On February 11, 2000, Defendant filed a Change of Plea Motion.

On February 23, 2000, a change of plea hearing was held, at which time Defendant was again represented by Epifanio Morales. Prior to the hearing, through counsel, Defendant negotiated a plea agreement with the Government, pursuant to Fed.R.Crim.P. 11(e)(1)(A). At the hearing, the Court reviewed and accepted the plea agreement, and set Defendant's sentencing hearing for June 27, 2000.

However, on March 3, 2000, Attorney Morales requested leave to withdraw as counsel, which was granted on March 27, 2000. On April 3, 2000, Defendant's present counsel Maria Sandoval was appointed through the Clerk of the Court. After a series of continuances for various reasons, Defendant informed the Court that he intended to file a motion seeking to withdraw his plea of guilty and to dismiss the Indictment.

On December 26, 2000, the Court denied Defendant's request to withdraw his plea of guilty and to dismiss the Indictment. Upon reconsideration of the Order, the Court granted Defendant's request to withdraw his plea of guilty, and also dismissed count one of the Indictment, a violation of 18 U.S.C. § 2320. Consequently, only Count two of the Indictment (an alleged violation of 18 U.S.C. § 2314) remains, and is the subject of Defendant's current motion to dismiss. The Court will now turn to Defendant's arguments as they relate to this charge.

## Analysis

The crime alleged in count two of the Indictment is a violation of 18 U.S.C. § 2314, which provides:

Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more; or

**Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or**

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any traveler's check bearing a forged countersignature; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof—

Shall be fined under this title or imprisoned not more than ten years, or both.

This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the Unit-

ed States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government. This section also shall not apply to any falsely made, forged, altered, counterfeited, or spurious representation of any bank note or bill issued by a bank or corporation of any foreign country which is intended by the laws or usage of such country to circulate as money.

In this case, the Defendant is charged with the illegal conduct described in paragraph 3 of Section 2314. The Indictment alleges that "[o]n or about the 25th day of November, 1999, in the District of Puerto Rico, within the jurisdiction of this court, the defendant herein, intentionally, with unlawful and fraudulent intent, did transport and cause to be transported in foreign commerce from the Dominican Republic to Puerto Rico, a falsely made and forged tax stamp for the Treasury Department of Puerto Rico, to wit: eight hundred and eighty seven (887) counterfeited tax stamps, knowing the same to be falsely made and forged, in violation of Title 18, United States Code, Section 2314." (Docket # 8).

In his motion to dismiss the Indictment, Defendant relies on the recently decided Supreme Court case of *Cleveland v. United States,* 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). A summary of the *Cleveland* decision is a follows: Louisiana law authorizes the State to award non-transferable, annually renewable licenses to operate video poker machines. Applicants for the licenses must meet certain requirements designed to ensure that they have good character and fiscal integrity. In 1996, the defendants were indicted on RICO charges in connection with a scheme to bribe state legislators to vote in a manner favorable to the video poker industry. One of the predicate acts alleged in a

RICO allegation was a violation of the mail fraud statute, 18 U.S.C. § 1341, which proscribes use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining ... property by means of ... fraudulent ... representations." The indictment alleged that because the Defendants had tax and financial problems that could have undermined their chances to receive the licenses, they fraudulently concealed that they were the true owners of a business establishment in their applications. The defendants moved to dismiss the indictment claiming that the alleged fraud did not deprive the State of property under Section 1341.

The Court agreed with defendants and dismissed the indictment by holding that Section 1341 does not reach fraud in obtaining a state or municipal license of the kind involved in that case. *Id.* at 372. The Court found that the gaming licenses were not property in the government regulator's hands because Section 1341 is largely limited to the protection of money and property, and any benefit that the Government derives from the statute must be limited to the Government's interests as a property holder. *Id.* at 370. Moreover, the Court held that a reading of the mail fraud statute finding federal jurisdiction in that situation would be a sweeping expansion of federal jurisdiction without a clear statement of intent from Congress. *Id.* at 374.

Extrapolating the *Cleveland* decision to the case at bar, Defendant argues that regardless of their denomination as "state tax stamps," and the specific reference to tax stamps in Section 2314, tax stamps do not qualify as property for the purposes of 18 U.S.C. § 2314. The Defendant goes on to argue that even if the stamps had not been counterfeited, as the government alleges, tax stamps are not property in the hands of the Commonwealth of Puerto

Rico, hence, they are not property in the hands of the Defendant. Finally, Defendant argues that just because he was stopped and the stamps seized at the Luis Munoz Marin International Airport in Carolina, Puerto Rico, does not transform this into a federal case, where no other federal interest exists.

In opposition to the Defendant's motion to dismiss the Indictment, the United States argues that the Supreme Court's decision in *Cleveland* is of little value here since the cases concern different statutes with different legislative purposes and histories. The Government emphasizes the fact that the Defendant is charged with the unlawful transportation of counterfeited tax stamps, and a determination of his guilt will be based on a showing, beyond a reasonable doubt, that he knew that the securities or tax stamps that he allegedly transported in interstate or foreign commerce were counterfeit. Moreover, the Government argues that for the purposes of paragraph three of Section 2314, the issues of value and property are irrelevant.

Upon our own review of Section 2314, we believe that the allegations contained in the Indictment are sufficient to overcome Defendant's motion to dismiss. As previously noted, the Defendant is charged with a violation of paragraph 3 of Section 2314, which criminalizes the following conduct, "[w]hoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited." We agree with the Government that to convict the Defendant of this charge they must show, beyond a reason-

able doubt, that the Defendant knew that the securities or tax stamps that he allegedly transported in interstate or foreign commerce were counterfeit. Furthermore, we agree that since there is no mention of "property" or "value" in paragraph 3 of Section 2314, the Defendant's reliance on *Cleveland* is misplaced. *See United States v. Hassel,* 341 F.2d 427 (4th Cir.1965) (holding that it is not an essential element of paragraph 3 of Section 2314 that the value of the transported forged securities or tax stamps be in excess of $5000).

Defendant's second argument is that the items seized from him are not actually "tax stamps," but instead are licenses which allow possessors to operate video poker machines in certain establishments. After reviewing a copy of the items seized by authorities (Docket # 60), we disagree. Title 18 U.S.C § 2311 sets forth a useful and broad definition of tax stamps to be used for Sections 2314 and 2315. Section 2311 states in pertinent part that "[t]ax stamps includes any tax stamp, tax token, tax meter imprint, or any other form of evidence of an obligation running to a State, or evidence of the discharge thereof." 18 U.S.C § 2311.

We agree with the Government's assessment that the items are counterfeits of decals issued by the Treasury Department of Puerto Rico. We also find that these decals fall within the meaning of "tax stamps" set forth in Section 2311 because they are evidence that a licensing fee of $1500 (obligation) has been paid to the Puerto Rico Department of Treasury (State)[1]. *See* 13 P.R. Laws Ann. § 9057(a)(2)(D) (Section 9057 provides that a $1500 yearly licensing fee must be paid to the Commonwealth of Puerto Rico for

---

1. In his previous motion to dismiss the Indictment, Defendant argued that Puerto Rico is not a state for the purposes of Section 2314. In our Opinion and Order dated December 26, 2000 (Docket # 48), we disagreed. Upon review, we see no reason to depart from our previous ruling on this issue.

the privilege to maintain a coin operated adult entertainment machine). Moreover, Section 9057(b) provides that "the above-established licensing fees will be applied separately for each ... machine or device .... The license must be displayed in such a way that it is visible to the public on each machine or device to which such license corresponds." 13 P.R. Laws Ann. § 9057(b). Therefore, pursuant to Puerto Rico's Internal Revenue Code, one decal must be affixed to each coin operated adult entertainment machine, and this decal serves as evidence that the operators $1500 obligation to the Commonwealth has been fulfilled for the current year.

Defendant's final argument with regard to the "tax stamps" is that the Court should find his prosecution, on these facts, constitutes a sweeping expansion of federal jurisdiction without a clear statement of intent from Congress. In *Cleveland*, the Court provided a thorough review of the mail fraud statute's legislative history, and concluded that the facts alleged there were outside the scope of Congressional intent. With regard to Section 2411, our review of the legislative history provides a different result.

In 1961, the Judiciary Committee sought to amend the United States Code to prohibit the transportation of fraudulent State tax stamps in interstate and foreign commerce. To that end, the Committee introduced a bill with the following stated purpose:

> ... to amend title 18 of the United States Code to prohibit the transportation of fraudulent State tax stamps in interstate and foreign commerce, by adding to the definitions in section 2311, the words 'tax stamp includes any tax stamp, tax token, tax matter imprint, or any other form of evidence of an obligation running to a State, or evidence of the discharge thereof,' and by amending

sections 2314 and 2315 by adding the words 'or tax stamps' to those sections. S.Rep. No. 1086 (1961), *reprinted in* 1961 U.S.C.C.A.N. 3264. Also germane to our discussion was the primary reason given for the amendment, which was:

> At the hearing held on July 26, 1961, a number of State tax officials appeared before the Subcommittee No. 2 of this committee to urge the enactment of a Federal law to deal with the problem of counterfeited State tax stamps or falsified tax imprints. Their testimony noted that in many instances it had been found that the fraudulent tax stamps or the equipment to make them had their origin outside of the State whose tax stamp or evidence of tax payment was counterfeited. It is therefore clear that this illegal traffic crosses State lines, and there is a basis for Federal action even though the fraudulent tax stamp is of immediate concern to a State and represents a loss to that State. This is an aspect of law enforcement which requires action by both State and Federal authorities and cooperation between them in order to control the illegal activity here concerned.

*Id.* Based on this explicitly stated purpose, we see no viability in Defendant's argument.

### Conclusion

Based on the discussion above, Defendant's motion to dismiss the Indictment is **DENIED.** Defendant's request for immediate release is also **DENIED.** A status conference will be set by the Court.

**SO ORDERED.**